UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENNIS D.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

_____

**DECISION AND ORDER**

1:21-CV-00431 EAW


## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Dennis D. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are: (1) the Commissioner's motion for partial dismissal (Dkt. 7); and (2) the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 18; Dkt. 20). For the reasons discussed below, the Commissioner's motion for partial dismissal is denied, but her motion for judgment on the pleadings is granted. Plaintiff's motion for judgment on the pleadings is denied.

**BACKGROUND**

Plaintiff protectively filed his application for DIB on March 14, 2017, and his application for SSI on March 1, 2017. (Dkt. 11 at 252, 314-15).[1] In his applications, Plaintiff alleged disability beginning March 30, 2016. (*Id.* at 252, 327). Plaintiff's applications were initially denied on June 16, 2017. (*Id.* at 314-315). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird on April 5, 2019. (*Id.* at 267-313). On June 24, 2019, the ALJ issued an unfavorable decision. (*Id.* at 249-266). Plaintiff requested Appeals Council review; his request was denied on January 26, 2021, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

## I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ

determined that Plaintiff met the insured status requirements of the Act through December 31, 2022.  (Dkt. 11 at 254).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 30, 2016, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: non-obstructive coronary artery disease, chronic dystolic heart failure; mild degenerative disc disease of the lumbar spine; and obesity.  (*Id.* at 255).  The ALJ also found that Plaintiff suffered from the non-severe impairments of hypertension, high cholesterol, arthritis, GERD, degenerative joint disease of the left knee, and depression.  (*Id.* at 255-56).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 256).  In particular, the ALJ considered the requirements of Listings 1.04, 4.02, 4.04C, as well as the effects of Plaintiff's obesity, in reaching his conclusion.  (*Id*. at 256-57).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff can] lift and carry up to 10 pounds frequently and 20 pounds occasionally, sit six hours in an eight hour day, stand or walk six hours in an eight hour workday.  He can occasionally climb ramps or stairs, but never climb ladders, ramps or scaffolds.  He can occasionally balance, kneel and crouch, frequently stoop, and never crawl.  He should never work in excessive heat, around excessive moisture or humidity, around excessive vibration or have exposure to hazards such as unprotected heights or moving machinery.  He should have no concentrated exposure to pulmonary irritants such as odors, fumes, dust, gases and poor ventilation.

(*Id.* at 257).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 260).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of inspector/hand packager, final inspector, and garment sorter. (*Id.* at 261). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 261-62).

## II.    **Plaintiff's Constitutional Challenge**

As a threshold matter, Plaintiff asserts in his complaint that:

> Pursuant to *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the office of Commissioner of Social Security is unconstitutional, as the President does not have removal power and the Social Security Administration is exempt from budget limitations, placing the agency wholly outside of the President's control. Since the Commissioner's office is unconstitutional, the ALJ's [sic] are not constitutionally appointed. Plaintiff is entitled to a new hearing with a constitutionally appointed ALJ.

(Dkt. 1 at ¶ 9).

The Commissioner filed a motion seeking dismissal of this aspect of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff lacked standing. (Dkt. 7). Plaintiff opposed the motion. (Dkt. 9). The Court deferred ruling thereon until after the filing of the administrative transcript and the parties' briefs pursuant to Local Rule of Civil of Civil Procedure 5.5. (Dkt. 10). In his brief seeking judgment on the pleadings, Plaintiff did not make any mention of or argument regarding his constitutional claim. (*See* Dkt. 19).

The Court is not persuaded by the Commissioner's argument that Plaintiff lacks standing to challenge the constitutionality of the ALJ's appointment. "To establish Article

III standing, a plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  In *Seila Law*, the Supreme Court explained that "[i]n the specific context of the President's removal power," standing is established where a party has sustained injury "from an executive act that allegedly exceeds the official's authority."  140 S. Ct. at 2196.  The Supreme Court reiterated that conclusion in *Collins*, holding that litigants who claimed to have been harmed by regulatory action taken by the Federal Housing Finance Agency had standing to bring a constitutional claim virtually identical to Plaintiff's challenge to the Commissioner's authority. 141 S. Ct. at 1779.  The Court does not find that any distinctions between the instant case and *Collins* impact the standing analysis, and accordingly denies the Commissioner's motion for partial dismissal on the basis of standing.  *See, e.g.,  Dante v. Saul*, No. CV 20-0702 KBM, 2021 WL 2936576, at *5 (D.N.M. July 13, 2021) (finding standing even though "[p]laintiff's constitutional claim may ultimately prove unsuccessful, especially given the Court's analysis of constitutional authority in *Collins*").

However, the Court finds that Plaintiff's constitutional arguments do not warrant reversal or vacatur of the ALJ's decision.  The Court notes first that while he opposed the Commissioner's motion to dismiss for lack of standing, Plaintiff subsequently made no affirmative arguments based on his constitutional challenge in his motion for judgment on the pleadings.  This is despite the fact that the Local Rules in effect at the time Plaintiff filed his brief required that it set forth "[a] statement of the issues presented for review, set

forth in separately numbered paragraphs."  L. R. Civ. P. 5.5(d)(1)(A) (W.D.N.Y. 2022).
Plaintiff's brief identifies only one issue: "The ALJ's RFC determination is unsupported
by substantial evidence as he failed to weigh the opinion of consultative examiner David
B[r]auer, M.D." (Dkt. 19 at 3).

Plaintiff has thus seemingly abandoned his constitutional claim.  *See Jackson v. Fed.
Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "[p]leadings often are designed to
include all possible claims or defenses, and parties are always free to abandon some of
them," and that "[w]here abandonment by a counseled party is not explicit but such an
inference may be fairly drawn from the papers and circumstances viewed as a whole,
district courts may conclude that abandonment was intended"); *see also Guerrero v.
Colvin*, No. 15 CIV. 1211 (KPF), 2016 WL 5468330, at *17 n.15 (S.D.N.Y. Sept. 29, 2016)
(deeming claims abandoned in Social Security case because they were not pursued before
the court).  The standing issue that Plaintiff did brief in opposing the motion to dismiss is
an entirely separate issue from whether Plaintiff is entitled to relief on the merits with
respect to the constitutional challenge. *See Collins*, 140 S. Ct. at 1788 n.25 ("[A] plaintiff
that challenges a statutory restriction on the President's power to remove an executive
officer can establish standing by showing that it was harmed by an action that was taken
by such an officer and that the plaintiff alleges was void. . . .  But that holding on standing
does not mean that actions taken by such an officer are void *ab initio* and must be
undone.").   Plaintiff's failure to pursue the merits of his constitutional claim strongly
supports a finding of abandonment.

In any event, the Court agrees with the numerous other federal courts who have concluded that "any constitutional defect in the removal portion of [42 U.S.C.] § 902(a)(3) does not justify the vacation and remand of a social security benefits determination by an ALJ." *Fauvie v. Comm'r of Soc. Sec.*, No. 4:20-CV-2750, 2022 WL 2662866, at *4 (N.D. Ohio July 11, 2022); *see also Bryan L. v. Comm'r of Soc. Sec.,* No. 2:21-CV-2835, 2022 WL 537577, at *6 (S.D. Ohio Feb. 23, 2022) (collecting cases and noting that "courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand").  This is so because, as the Supreme Court held in *Collins*, even if the statute unconstitutionally limited the President's ability to remove the Commissioner, that is not a basis to blanketly deem the actions taken by the Commissioner void.  *See* 141 S. Ct. at 1787.  Instead, the burden is on Plaintiff to demonstrate that he suffered a "compensable harm." *Id*. at 1788-89.  A harm is "compensable" in this context if there is a "connection between the unconstitutional limit on [the Commissioner's] removal and the ALJ's decision denying . . . benefits[.]" *Fauvie*, 2022 WL 2662866, at *4.  Plaintiff has not demonstrated any such connection here, and so his constitutional claim does not entitle him to relief, even accepting the correctness of his challenge to the removal provision. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference[.]").  Accordingly, the Court will not remand the case for a new hearing on this basis.

III.   **The ALJ's Decision is Supported by Substantial Evidence and Free from Reversible Error**

The Court turns next to Plaintiff's challenge to the ALJ's RFC finding.   As noted above, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to weigh the opinion of consultative examiner David Brauer, M.D.  (Dkt. 19 at 3).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  In performing this task, the ALJ "must consider and weigh the various medical opinions of record." *Nusreta D. o/b/o D.J. v. Comm'r of Soc. Sec.*, No. 6:19-CV-06270 EAW, 2021 WL 972504, at *4 (W.D.N.Y. Mar. 16, 2021).  However, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta*, 508 F. App'x at 56.

Under the regulations applicable to Plaintiff's claims:

> [T]he ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin,* No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted).  "The failure to assign a specific weight to an opinion may be harmless error, particularly where the ALJ engages in a detailed discussion of the evidence and the ALJ's conclusion is consistent with the opinion." *Nusreta D.*, 2021 WL

972504, at *4.

Here, it is undisputed that the ALJ failed to explicitly state the weight given to Dr. Brauer's opinion. However, the Court agrees with Defendant that this failure was harmless error. First, the ALJ clearly reviewed and considered Dr. Brauer's opinion, inasmuch as he walked through the specific findings that Dr. Brauer made on physical examination, as well as Dr. Brauer's opinion that Plaintiff had no limitation in his ability to sit, moderate limitations in his ability to stand for long periods, walk long distances, and push, pull, and lift and carry heavy objects repeatedly, and moderate to marked limitations in his ability to perform activities with mild to moderate exertion. (*See* Dkt. 11 at 259).

Second, Dr. Brauer's opinion is largely consistent with the RFC finding. There is no contradiction between Dr. Brauer's opinion that Plaintiff has moderate limitations in prolonged standing and walking, as well as pushing, pulling, and lifting and carrying heavy objects repeatedly, and the ALJ's determination that Plaintiff could perform a limited range of light work. *See, e.g., White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (rejecting argument that ALJ could not conclude that a claimant was capable of light work based on opinion that claimant had moderate limitations in standing, sitting, and "performing other activities"); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (affirming RFC finding for light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, where consultative examiner opined that the plaintiff had a "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting"); *Katherine R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01055-MJR, 2021 WL 5596416, at *5 (W.D.N.Y. Nov. 30, 2021) (collecting

cases and explaining that "courts within this Circuit have consistently held that mild and moderate limitations . . . are consistent with an RFC for light work").

The ALJ also afforded significant weight to the opinion of state agency reviewing physician Dr. G. Feldman, and explained the basis for that determination.  (*See id*. at 260). Dr. Feldman reviewed and relied upon Dr. Brauer's physical examination in opining that Plaintiff had limitations in lifting, carrying, and bending.  (*Id*. at 323).  Accordingly, the ALJ's explicit review of Dr. Feldman's opinion supports the conclusion that the ALJ accounted for Dr. Brauer's findings when reaching an RFC determination.

As to Dr. Brauer's opinion that Plaintiff had a "moderate to marked limitation in [his] ability to perform activities with mild to moderate exertion of more due to cardiac status," Dr. Brauer was equivocal as to this point, explaining that he lacked sufficient "details of [Plaintiff's] cardiac condition" to be able to "definitively determine limitations." (Dkt. 12 at 57).  However, Plaintiff's treating cardiologist Dr. Susan Graham—who did have the details of Plaintiff's cardiac condition—opined that Plaintiff had no limitations "from [a] cardiac point of view."  (*Id*. at 274).  The ALJ gave significant weight to Dr. Graham's opinion (Dkt. 11 at 260), which explains the lack of any additional restrictions in the RFC finding related to Plaintiff's cardiac condition.  The ALJ's failure to expressly state the weight given to Dr. Brauer's opinion has thus not "hinder[ed] the Court's ability to determine whether the ALJ's decision is supported by substantial evidence." *Nusreta D.*, 2021 WL 972504, at *4 (citation omitted).

In sum, while the ALJ did err in failing to explicitly state the weight given to Dr. Brauer's opinion, the error was ultimately harmless and accordingly does not warrant remand.

## CONCLUSION

For the foregoing reasons, the Court: (1) denies the Commissioner's motion for partial dismissal (Dkt. 7); (2) denies Plaintiff's motion for judgment on the pleadings (Dkt. 18); and (3) grants the Commissioner's motion for judgment on the pleadings (Dkt. 20). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: January 25, 2023
      Rochester, New York